UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-03975-SEB-MJD |
| ALAN H. NEW, DAVID N. KNUTH, SYNERGY INVESTMENT SERVICES, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FINAL JUDGMENT**

The Securities and Exchange Commission ("SEC") initiated this action on December 17, 2018, charging Defendants with selling unregistered securities in violation of 15 U.S.C. § 77e(a) and selling securities without registering as brokers or dealers in violation of 15 U.S.C. § 78o(a). Dkt. 1. Pending before the Court is the SEC's Motion for Entry of Final Judgments of Permanent Injunction and Imposing Disgorgement, Prejudgment Interest, and Civil Penalties. Dkt. 11.

For the reasons explicated below, we GRANT the SEC's motion for final judgment with respect to the permanent injunction. However, upon review of the parties' submissions, we find that we cannot resolve the factual issues concerning the appropriate monetary amounts without further evidentiary findings. We therefore DEFER a ruling as

1

to disgorgement, prejudgment interest, and civil money penalties pending further evidentiary submissions.

## I.     Procedural Background

Defendants filed a motion to stay proceedings on November 26, 2019, pending the Supreme Court's decision in *Liu v. SEC*, 140 S.Ct. 1936 (2020), deciding whether the SEC can seek disgorgement as a form of equitable relief or if claims for disgorgement must be analyzed as a penal remedy. After the Supreme Court issued its decision, we granted Plaintiff's unopposed motion to reopen the case on July 24, 2020. Both parties have now fully briefed the remaining legal issues in light of *Liu*, and this motion is ripe for ruling. Defendants agree that: (1) for purposes of the SEC's motion, Defendants are precluded from arguing they did not violate the federal securities laws as alleged in the Complaint; and (2) for purposes of the SEC's motion, the allegations of the Complaint shall be accepted as and deemed true by the Court. Because the allegations of the Complaint [Dkt. 1] shall be accepted as and deemed true, we do not reiterate the factual background of the parties' dispute.

## II.    Discussion

The SEC requests a final judgment permanently enjoining Defendants from future violations of the provisions of the federal securities laws identified in the SEC's Complaint; ordering Defendants to pay, jointly and severally, disgorgement and prejudgment interest; and requiring each Defendant to pay a civil penalty of $200,000.[1]

---

[1] The Commission requests a combined total of $1,059,894.97 from Mr. New, [Dkt. 34-5 at 3], and a combined total of $1,042,915.45 from Mr. Knuth. *Id.* at 10.

2

Defendants do not oppose the permanent injunction but object to the SEC's requested entry of disgorgement, prejudgment interest, and civil money penalties. Dkt. 15.

### A. Permanent Injunction

Defendants have submitted their respective consents to the SEC's requested permanent injunction. Dkt. 2-1 at 1; Dkt. 2-3 at 1. They have willingly and voluntarily agreed to an entry of final judgment which permanently restrains and enjoins them from violating Section 5 of the Securities Act (15 U.S.C. § 77e) and Section 15(a)(1) of the Exchange Act (15 U.S.C. § 78o(a)(1)). *Id.*; Dkt. 34-5. Thus, this portion of the SEC's motion for final judgment is GRANTED.

### B. Disgorgement Awards and Prejudgment Interest

In *Liu v. SEC*, 140 S.Ct. 1936, 1940 (2020), the Supreme Court held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [Title 15 U.S.C.] § 78u(d)(5)." In calculating net profits for the purpose of ordering disgorgement, courts must deduct legitimate expenses. *Id.* at 1950. When the "entire profit of a business or undertaking" results from the wrongdoing, a defendant may be denied "inequitable deductions" such as for personal services. *Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189, 203 (1881). However, this exception requires an ascertainment of "whether expenses are legitimate or whether they are merely wrongful gains 'under another name.'" *Liu*, 140 S.Ct. at 1950 (quoting *Providence Rubber Co. v. Goodyear*, 76 U.S. 788, 803 (1869)).

The SEC maintains that the Defendants collectively earned more than $1.5 million in transaction-based sales commissions. Compl. at ¶¶ 1, 12, 33. They request that the

Court order Mr. New to pay disgorgement and prejudgment interest of $859,894.97[2] and Mr. Knuth to pay disgorgement and prejudgment interest of $842,915.45.[3]

Defendants first urge that the SEC's request for disgorgement be denied. Alternatively, Defendants maintain that the amount of disgorgement should be far less than that sought by the SEC, asserting that the numerical starting point for their "net profits" should be $351,798.06.[4] However, Defendants' briefing eventually negotiates their wrongfully gained net profit down to $115,423.06 after claiming that the following items should be added as business expenses, and thus subtracted from their "net profit" calculation: (1) settlements they have paid in relation to losses arising from Woodbridge,[5] (2) Mr. Knuth's relinquished claim for unpaid interest for his own lost Woodbridge investment,[6] and (3) the Defendants' attorneys' fees expended in defending themselves throughout the legal actions associated with Woodbridge losses.[7]

---

[2] Mr. New's combined total is broken down as a disgorgement award of $742,067.24 and prejudgment interest amounting to $117,827.73. Dkt. 34-5 at 3.

[3] Mr. Knuth's combined total is broken down as a disgorgement award of $727,414.34 and prejudgment interest amounting to $115,501.11. Dkt. 34-5 at 10.

[4] Defendants claim that after subtracting Synergy's business expenses attributable to Woodbridge from their total claimed business expenses to the IRS, the starting point for a disgorgement award should be $351,798.05 to accurately reflect their "net profits" from commissions on Woodbridge investments.

[5] Defendants maintain that they paid settlements totaling $74,375.00 to their former clients, the Woodbridge Liquidation Trust, and to the Michigan Attorney General, who sued them related to Woodbridge. Dkt. 32 at 9.

[6] Mr. Knuth asserts that he relinquished his claim to $36,000 for unpaid interest for his own investment in Woodbridge to settle with the Woodbridge Liquidation Trust. Dkt. 32 at 9. However, the SEC disputes this amount, contending that the accurate value of the waived claim is only $14,652.90. Dkt. 34 at 12 n.11. The SEC has credited Mr. Knuth for this amount in the calculation of their requested disgorgement award.

[7] Defendants state that they have paid $126,000 in attorneys' fees to defend themselves in legal actions stemming from Woodbridge losses. Dkt. 32 at 10. The SEC maintains that this is not a

Defendants failed to provide source materials to adequately account for the full scope of their proposed deductions. In total, Defendants claim credits amounting to $1,439,058.94,[8] and the SEC asserts that $1,373,058.94 of the claimed credits are unsubstantiated. Most notably, Defendants failed to disclose the nature of the expenses that make up their purported Woodbridge-related business expenses and, as the SEC notes, this leaves the Court with no basis to determine the marginal cost of producing the Woodbridge commissions.[9]

After reviewing the parties' briefing, we find that factual disputes remain concerning the grave disparity in the amount the parties assert the SEC may be legally entitled to request as a disgorgement award under the standard set out in *Liu*. We are unable to determine the appropriate net profit amount based on the evidence submitted by Defendants thus far. The parties are therefore instructed to confer with Magistrate Judge Dinsmore to explore the factual disagreements relating to the amount of net profits from which deductions, if any, will be made for legitimate business expenses. Further, the Defendants will be expected to produce all reasonably ascertainable documentation to support their claimed credits.

---

deductible business expense, and that even if it was, Defendants have failed to provide any evidence establishing the amount, reasonableness, or their payment of these fees. Dkt. 34 at 9.

[8] This amount does not include Defendants' alleged credits for paid income taxes, which they argue only come into account if Synergy's business expenses are discounted by the salaries and profit distributions attributable to Woodbridge. Dkt. 32 at 6–7.

[9] Defendants rebut that the SEC had the authority to fully investigate Defendants' finances prior to this suit and had the opportunity to discover financial information after filing suit but failed to do either. These allegations, even if true, are not relevant because the Court must still decide the appropriate monetary amounts in dispute and cannot do so without being provided with the underlying factual evidence.

Defendants previously consented to pay prejudgment interest if disgorgement is ordered, calculated from December 1, 2017, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Dkt. 2-1 at 2; Dkt. 2-3 at 2. The amount of prejudgment interest will need to be recalculated based on the principal amount of disgorgement liability, if and when that amount is determined.

### C. Civil Penalties

The SEC requests that both Mr. New and Mr. Knuth pay $200,000 as a civil penalty. In civil actions, the SEC can seek both civil penalties and "equitable relief." 15 U.S.C. §§ 78u(d)(3), 78u(d)(5); *see also Liu*, 140 S.Ct. at 1940 (holding that disgorgement is permissible "equitable relief"). In determining a civil penalty for violations of federal securities law, a "court should generally consider factors such as: 'the seriousness of the violation; the defendant's scienter; the repeated nature of the violations; whether the defendant has admitted wrongdoing; the losses or risk of losses caused by the conduct; any cooperation provided to enforcement authorities; and ability to pay.'" *SEC v. Williky*, 942 F.3d 389, 393 (7th Cir. 2019) (quoting *SEC v. Zenergy Int'l, Inc.*, No. 13-CV-5511, 2016 WL 5080423, at *16 (N.D. Ill. Sept. 20, 2016)).

Defendants and the SEC have already advanced a multitude of factors for the Court to consider in determining the appropriate civil penalty. However, we shall defer a discussion of the relevant factors asserted by the parties because the facts underlying the SEC's request for a civil penalty are intertwined with their request for disgorgement and these matters will be resolved together once additional evidentiary submissions are made.

### III.  Conclusion

Any entitlement to equitable relief in the form of a disgorgement award is intertwined with unresolved factual disputes. Therefore, an evidentiary hearing is required. The civil penalties requested by the SEC will be addressed with the disgorgement award, if any, and recalculated prejudgment interest.

Accordingly, we GRANT the SEC's motion for final judgment with respect to the permanent injunction and DEFER a ruling as to disgorgement, prejudgment interest, and civil money penalties pending further evidentiary submissions.

IT IS SO ORDERED.

Date:  9/29/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan A. Bont
PAGANELLI LAW GROUP
jon@paganelligroup.com

Ian P. Goodman
PAGANELLI LAW GROUP
ian@paganelligroup.com

Stephanie Lauren Grass
PAGANELLI LAW GROUP
stephanie@paganelligroup.com

Stephanie N. Moot
UNITED STATES SECURITIES AND EXCHANGE COMMISSION
moots@sec.gov

Christine Nestor
U.S. SECURITES AND EXCHANGE COMMISSION (Miami)
NestorC@sec.gov